Okay. Do we have, let's see, we have Ms. Nedza, you're there?Yes, Your Honor.Okay, good. I want to first acknowledge our gratitude to Judge Tashima from the Ninth Circuit who has been with us before. This Court, not only are we down two judges, as have been for a while, but we have such a volume of cases that we can only keep relatively current by having the addition of visiting judges. Judge Stapleton and I are delighted to have Judge Tashima with us today, and I know I express the appreciation of the entire Court. Okay, we're going to, we're here first, Hummel v. Rosemeyer, and we have one counsel using our video, and I must say that we're rather pleased about that. The Courts have all this equipment, and it's good that people are willing to take, to do that, and we will give her arguments the same way that we give to a live person before us. But we'll start with Mr. Rothman.Thank you, Your Honor.Okay, you're not on the tape until you get on, in front of the mic.You're not on the tape until you get on the mic. The microphone is not only so that we can hear you, it's also directly attached to the tape machines, and that we do, and I guess they're now CDs. We now, we do, some of us listen to the tapes before we do anything else.Thank you. May it please the Court, I'd like to reserve five minutes for rebuttal. That's granted, and state your name for the record. I'm sorry, H. David Rothman, R-O-T-H-M-A-N, and I'll say hello to Ms. Medza, whom I've never met, but we've talked on the phone. She's the counsel's ineffectiveness is rather overwhelming, and unless the Court has some questions on that subject, I would like to discuss the matter of prejudice.Your time, you discuss whatever you'd like.The first item of prejudice is that this young man went to trial when he was mentally incompetent by raising a gunshot wound to his brain that he himself administered after he shot and killed his wife. Well, the state, the state contests your claim that counsel stipulated to the petitioner's competence to stand trial. Could you tell us what, what the evidence shows with respect to that stipulation?Your Honor, there were two reports by psychologists, one for the commonwealth and one for a different thing. There was no psychiatrist used, which the Mental Health Procedures Act required.No, isn't it only if the examination is ordered by the judge? Isn't that when it says a psychiatrist is required?That's right, but there was no application to the trial There was no basis under the law or the facts for relying on the reports of the two psychologists, both of whom had severe reservations about the client, my client's competency. Is your client a paraplegic now? Pardon me? Is your client a paraplegic? Paraplegic? I thought, I thought that's what the record showed. Your Honor, I'm having difficulty hearing you. I'm sorry, am I not talking clearly? It doesn't sound like it is. What is your client's current physical position? Oh, he's a patient at the Laurel Highlands Mental Health Center. It's a prison for either elderly or disabled convicts. Is he a paraplegic? Yes. Oh, alright, that's what I had asked. Okay, thank you. Right. He was rendered that way by the gunshot wound in his attempt to commit suicide, but he didn't do a complete job like he did when he killed his wife. What do you have, getting back to the other point, what do you have to show in order to show prejudice? Your Honor, the first item of prejudice is that he was tried and convicted by a judge and a jury in an American court when he was not confident to go to trial. I know that, but what do you have to show to show prejudice? That fact by itself is prejudice. Secondly, we are contending that the trial judge charged on voluntary manslaughter, which he had an obligation to do under Pennsylvania law. The trial judge did or did not charge voluntary manslaughter? Did the trial judge charge? Yes, ma'am. He did? Yes, he did. Okay. I don't think it was even requested by defense counsel, but he did charge on voluntary manslaughter. Why were you prejudiced by that? It seems to me that that would have been in your favor. Your Honor, the lawyer who was appointed to represent him was the public defender of Clearfield County. He didn't prepare completely the defense of voluntary manslaughter in terms of his client's disability and inability to communicate with his attorney and to testify. And so the charge of which he could have been found guilty of voluntary manslaughter, and I don't know why the district attorney is talking about involuntary manslaughter. That's not in the case. This is a killing by provocation. You say that, as I understand your position here, it is that the lawyer was ineffective because he didn't prepare the case for voluntary manslaughter. That's right. How do we know he didn't prepare the case for voluntary manslaughter? Your Honor, the client told his mother the night before the trial ended, and the defense lawyer never really talked with his client about this. There was evidence of the victim creating a substantial debt, and that was the only evidence of provocation. The real evidence of provocation was the fact that the defendant's wife came home, informed him that she was committing oral sex on many men, and she would come home and then kiss him. And that just really blew him off the face of the earth. But what do we know about the lawyer's preparation for the trial? I mean, you say the lawyer didn't prepare, and I'm trying to find out how do we know what the lawyer did? What's in the record? Well... Or didn't do? The defendant was... After he had brain surgery in the Altoona Hospital, he was admitted to bail, and he was at his parents' home for nine or ten months before trial, and counsel never came to the house to talk with him. Did counsel try? I thought that there was some indication that Mr. Hummel's parents, who were his guardian, didn't want him interviewed. That's not true at all on this record, Your Honor. The parents kept telling him that their son... Who's the him? Who's the him? The counsel? Counsel. Yeah, go ahead. The parents kept telling counsel that their son was incompetent, and they wanted him examined by a psychiatrist, and she provided the names of various psychiatrists in the Clearfield area who would have been available to examine their son and render an opinion on his competency. He never... That doesn't go to manslaughter, does it? Pardon me, Your Honor? That doesn't go to the manslaughter issue, does it? It does, because the client was unable to communicate because of his damage to his brain with his counsel, and ultimately, before sentencing, counsel tried to say to the trial judge that he was preparing the defense of incompetency to the jury, and he never did, nor could he have.  under the Mental Health Procedures Act before trial. That was not a trial issue, and it could never have been a trial issue. He didn't know what he was doing, and there was no evidence of incompetency presented to the jury because he didn't have it, and then he took an appeal to the superior court contending that the court erred in declaring the client competent when he never prepared that issue. That was a spurious appeal to the superior court. There was no record, and they affirmed the conviction because there was no evidence. The only argument at the time of sentencing that counsel made was an attempt to tell the judge that he had difficulty communicating with his client just as the psychiatrist said he would have. Mr. Rothman, your red light is on. We'll hear you again on rebuttal. Thank you. Thank you very much. Ms. Nedza? Good morning. My name is Leanne Nedza. You're going to have to speak up so we can hear you. You have to get closer to the mic. Okay. My name is Leanne Nedza. I'm an assistant district attorney in Clearfield County. Can you hear me okay? Yep. I can. Can you? Yes, go ahead. Okay. I'd just like to thank you for allowing me to do this by video argument. You saved me an additional couple of hours driving, so I wanted to thank you for that. I appreciate that. I'd also like to say that on behalf of the respondents, we would rely heavily on the report and recommendation from the district court as well as the Pennsylvania Superior Court opinion and the reasons set forth in both of those opinions. And when I refer to the Superior Court opinion, I'm talking about the one from PCRA from 2001 was when that decision was issued. Another thing I'd like to – Excuse me. Let me start out by going into AEDPA and the question of how much deference, if any, in this case we have to give to the state court finding. The Pennsylvania standards at that time, if you agree, required a defendant to prove incompetency by clear and convincing evidence. In 1996 in Cooper v. Oklahoma, the Supreme Court of the United States held that clear and convincing standard was unconstitutional. Wasn't Hummel found competent under an unconstitutional burden of proof? Well, I don't know that the judge ever – the trial court judge in reading the opinion, I don't know that he ever said to what degree he found that he was competent, whether he found it clear and convincing or evidence. I'm not sure how it was that he found it. The issue as far as the certificate of appealability was whether – is basically the ineffectiveness claim of the trial counsel as far as whether he agreed that the defendant was competent to stand trial. And my argument to that would be that he didn't agree that he was competent. What he agreed to was that the court was going to find him competent. And basically what he had working against him were two psychologist reports, one that he hired, one that the Commonwealth hired, and he had the judge saying, I'm going to find him competent. I don't believe that Attorney Bell trial counsel had any choice, but to agree at that point, agree with what the judge was going to find or that he was going to find that he was competent. Did he argue incompetence to the judge, that his client was incompetent because of all the factors we know afterwards, that he kept falling asleep, that he couldn't communicate, that he couldn't answer questions, that he didn't have current memory? Were those factors placed before the trial judge who you say had the obligation, whether to find him competent or not? I don't know at the point before they actually – when the judge made the competence determination, it was before trial. At that point, what evidence they had was the two psychologist reports and they had the evidence. Mr. Bell would have known at that point that Mr. Hummel, the defendant, was able to communicate with him during the preliminary hearing. And he talks about that in the PCRA hearing, that he was able to ask him questions and contribute during the course of the trial. During the course of the trial, wouldn't effective assistance of counsel require that counsel argue throughout, perhaps, that his client was not competent to stand trial? Isn't that part of effective assistance of counsel? Only if it got to the point where he felt that the client was not competent in that he didn't understand the nature of the proceedings or wasn't able to communicate with him. Well, didn't the client fall asleep at times during the trial? Wasn't there a point at which he went out and came back, the client had fallen asleep and he couldn't communicate with him? I mean, what other evidence of incompetence did counsel require before arguing to the judge, you can't try this client on murder? Well, Your Honor, with all due respect, my recollection is that he fell asleep during a gun expert or ballistics testimony or something like that. And just from my own personal experience, it's not always the most interesting testimony. So perhaps based on his injuries, he's not able to conduct himself as we would see fit, maybe someone that was younger that wasn't professional maybe would fall asleep during testimony of something of that nature, something that was boring to them. I don't think that that would mean that he's not competent. Maybe it means he lacks social skills, but I don't know that that makes him incompetent. But didn't he have an obligation to at least raise that issue with the judge? He has a client on trial for his life. I mean, there's a death sentence there, potential. Doesn't he have to bring before the court every possible argument? I agree. Yes, I do agree with that. I would also note that the trial court judge, in his opinion, noted that he was observing the defendant as well during the proceedings. And there was never a time where he thought, I can't remember his exact language, but where he thought that his mood or demeanor had drastically changed to the point that he thought that he was incompetent. And I know there was an issue with an outburst that he had, but also Attorney Bell had testified where there was testimony about marks on the victim's face, and the defendant commented something like, they'll never know how they got there, but it wasn't from the gun or something to that effect. Go ahead. I'm sorry. I didn't mean to interrupt you. Yeah, go ahead. The issue was, did he understand the proceedings? Did he understand what was going on? And he clearly understood. Even when the psychiatrist talked to him in 1996, he was able to say who the prosecutor was, what their role was, what his defense attorney's role was, what the trial judge's role was. That's the basic rudimentary understanding that I think we're looking for here when deciding if someone's competent. Did he ever talk to his, did the counsel ever talk to the defendant and ask him, what was his recollection of the events? I don't know the answer to that. All I can recall from the transcripts is that trial counsel, part of his strategy was that he wanted him to recall as little as possible because that somehow related to their defense. And I would like to address on that note, that gets me back to one of the issues that Attorney Rothman raised earlier, and that was about the trial judge's charge. The certificate of appealability specifically relates to whether the attorney was ineffective regarding the defendant's competence, not with respect to the voluntary manslaughter charge and the evidence of provocation. That's not in there, and I would argue that... I just want you to know that we, ourselves, can extend the certificate of appealability if we feel it doesn't accurately or sufficiently cover the issues that are before us, so that the certificate of appealability doesn't limit us. We have opinions that say that. But let me go back to Edford, because you certainly argue in your brief that we should defer to the state court findings. You do make that argument. That's our basic requirement in a habeas case. And so I go back to the initial question that I asked, which is didn't Pennsylvania have an unconstitutional standard with respect to how you prove incompetence in light of the Supreme Court's decision in Cooper v. Oklahoma? To be perfectly honest with you, that particular opinion, whether it... If you're saying that it was clear and convincing... I'm asking. I'm asking. I'm not saying. Okay. Yeah, go ahead. Oh, okay. To be honest with you, I can't answer that. Okay. If the standard was clear and convincing, I would argue that the judge never stated to what level he found that he was competent, whether it was clear and convincing or a higher standard or a lower standard. How can we evaluate that which the state court judge found if we don't know the standard that he used to make his finding of competence? I would suggest that with a look at the record, that the court could make its own decision that the defendant was competent based on the evidence before it with the report. You're saying we should decide whether we, being the court, should decide whether he was competent? I just want to understand what you just said, Ms. Nessa. Yes. I believe that that would be appropriate based on a review of the record that you could find that the judge made an appropriate decision. Ms. Nessa, staying with this issue that was certified, the competency issue, as I understand it, under the Pennsylvania Mental Health Procedures Act, the counsel could have asked for a court-ordered psychiatric evaluation, right? He could have asked, yes. And he did not? Right. So there was no such evaluation. In fact, there was not even a real competency hearing, was there? Not that I know of. There was some type of hearing on August 10th of 1992 where they had this order, but I don't know that it was a hearing per se where there was testimony or anything. There just seemed to be an order that came out of it. So what is this finding of competency based on? Based on the psychologist reports and I guess based on the competency reports, or I'm sorry, the psychologist reports at that point, but I'd like to note as far as the prejudice standard goes, that even when the psychiatrist, like I mentioned before, when the psychiatrist talked to him in 1996, he agreed to some extent with the findings that the psychologist made. He just ultimately disagreed with their opinion about his competency. Who is the he in your sense? You said he agreed. Who is the he? The defense counsel. Okay. I'm sorry. The psychiatrist agreed with the two psychologists. We have two psychiatrists, right? We have one. Two psychologists and a psychiatrist, Wettstein. I think she's talking about Dr. Wettstein. Right. And what I'm saying is that he essentially agreed with the psychologist that he understood the concepts of a trial and was aware of the charges against him. That's where I was saying that he knew who the defense attorney was, what his role was. He knew what the prosecutor's role was and the judge's role. At the PCRA, when Hummel, this time with a new attorney, sought a PCRA supported by the opinion of Dr. Wettstein, his conclusion that Hummel was incompetent at the time of the trial. Isn't that right? That was his ultimate conclusion, yes. But throughout his evaluation, he did agree with several of the things that the psychologist had said. And also the trial court found him to not be credible during the PCRA because he had only spent three hours with the defendant and because his evaluation of him was three and a half years later after the trial. So he found the psychiatrist not credible is what you're saying? Right. And his, yes. I would just like to briefly, if I could, mention the voluntary manslaughter issue and defense attorney Rothman had stated that the only issue, the only evidence of provocation was the debt during the trial. And I would disagree with that because during the trial, the victims, I don't know if you want to call them boyfriend or what you want to call them, the person, the man that the victim was having the affair with did testify that he was having an affair with the victim. And that man, his wife also testified that she had called the defendant that day somewhere around the time of this incident and informed him that the defendant's wife was having an affair with her husband. So that evidence was put forth in the trial as well. So that wasn't the only evidence of provocation was not just the debt, as attorney Rothman argued. I'm not sure I know where you're going. Well, the red light is on. Are you saying then, does the state agree that there was provocation? I don't know where the last thing you said, what you conclude from that statement. Well, he was saying that the defense attorney was ineffective because he did not set forth any sufficient evidence of provocation, that the only evidence of provocation was the debt that the victim had incurred. And I disagree with that. There was more than that set forth. It's just that the jury obviously didn't believe that or didn't agree with it. Thank you for your time. Thank you. Mr. Rothman, you have five minutes? Marina? Marina? Five minutes? Yes. Okay. Let me ask your help right from the start here. You acknowledged, I think, when you spoke to us last, that you had a burden of proving prejudice. Yes. That is, your client has to show reasonable probability that had counsel been effective, a competency hearing would have been given and he would have been found to be incompetent. A reasonable probability that he would be found to be. Yes, Your Honor. Okay. Now, at the PCR stage, there was a complete hearing, evidentiary hearing on this issue of prejudice from the failure to ask for a competency hearing, right? Yes, sir. And do we not have to, even if we do not have to accept the final conclusion of competency, do we not have to accept the findings of fact of the PCR, the post-conviction relief trial judge? No, Your Honor. Why not? On this record, the defense counsel and the district attorney stipulated the competency. He had no authority to do that. Wait a minute. Let's keep on topic, please. We're talking about prejudice and whether your client has demonstrated that there is a reasonable probability that he was incompetent at the time of trial. Yes. And that the trial judge found him competent. The trial judge in the PCR, in the post-conviction relief proceeding, with new counsel, with new experts, found him to be competent. Now, Judge, the trial judge in the post-conviction relief proceeding may have applied the wrong standard, ultimately, but he credited, well, he said, look, these experts agree that he understood the nature of the proceedings and what he was charged with, and they agreed that his problem was he had short-term memory loss, which reduced his attention span and made it more difficult for him to digest information he received in the course of the trial. What the experts disagreed with was whether compensation, whether that could be compensated for at the trial. That's right. And Dr. Wetstein said that was unreasonable. Unreasonable. It could not be done. And the psychologist said it was reasonable to expect. And the trial judge in this post-conviction relief proceeding said, I believe Attorney Bell, when he tells me that he could communicate with his counsel, and I was there myself and I observed and I didn't find he was behaving abnormally or not being attentive most of the time. I don't think the record, Your Honor, was sufficient for the trial judge to make any conclusion on competency. The reports of the psychologist were not adequate, and throughout the trial even Mr. Bell finally agreed with Dr. Wetstein that his client would stop mid-sentence, could not complete his sentences, which is part of what Dr. Wetstein concluded three and a half years later, which under Pennsylvania law was admissible. If the record is inadequate to determine whether or not he was incompetent at the time of the trial, how does that cut? You have the burden, your client has the burden, of demonstrating a constitutional violation, and that includes the burden of showing that had counsel performed effectively, he would have been found to be incompetent. Now, if there isn't a record, you lose, right? No, there is a record.  Dr. Wetstein established that he was not competent to go to trial, and he was never evaluated by a psychiatrist, which was required by the Act. And at the time that defense counsel stipulated to competency, that was the time at least he had an opportunity to say, Judge, we have to have a hearing on that issue. He never requested it, and the Act required it. I have two questions to ask you, which I'm going to do even though the red light is on. You say that defense counsel stipulated to competence. Where is that in the record? Can you give us an appendix page? Yes, your honor. On August 10th of 92, I'm sure I covered it in the history of the case. They came before the court with the reports of the two psychologists, and both lawyers stipulated to competency. And you say that if we read the record, we will find that? Yes, your honor. Okay. We have read the record, but we'll read it again. Let me ask you. It would help if you could tell. If you have a cite there, tell us where it is in the record, please. Well, if you don't have it there, you can submit it. You can submit it by a letter. I'll do that, your honor. Okay. What we want is a record citation to the stipulation of competency. Okay? I have one other question. Oh, here. Somebody is helping you. Okay. At page 16A of the record, and part of the court's opinion, which was appended to volume one, I quote, on August 10th, 1992, following a review of the reports that had been filed by the commonwealth. Yeah, we have that, but it doesn't say anything about the lawyer having stipulated. No, it does, your honor. Excuse me. Go ahead. This court issued an order upon the agreement of the parties. That's right. That based upon the findings of both psychologists, the appellant was competent to stand trial with certain physical and mental restrictions. Okay. Thank you. Let me ask you one other question. After the two psychologists' reports were submitted, or maybe one of them said that he was competent to stand trial if there were modifications made at the trial. I don't see anything in the record that shows what those modifications were. They're in the report, your honor, of the psychologist for the defendant appellant. He said that the client would have had to have been explained on the record or by his psychologist as to what was going on. Recesses would have had to be taken. That wasn't done. There's nothing of record that the trial judge's pension was drawn to any shortcoming on the part of the defendant. And particularly the outburst that he made during the closing argument of the district attorney was never explored. And that was critical evidence on provocation. Thank you. Thank you. Your red light is on and we have other cases. We will certainly take this case under advisement. Thank you, Mr. Rothman. Thank you, Ms. Nedra.  Thank you.